```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :
UNITED STATES                                           :
                                                        :     S5 11 Cr. 1032 (PAE)
              -v-                                       :
                                                        :     OPINION & ORDER
MARIA MEJIA et al.,                                     :
                                                        :
                            Defendants.                 :
                                                        :
------------------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

Defendant Maria Mejia moves to dismiss the charges against her in indictment S5 11 Cr. 1032, the most recent indictment in this multi-defendant case, on the ground that the Government secured this indictment in violation of her Fifth and Sixth Amendment rights. Mejia argues that because the Government presented the fifth superseding indictment to the same grand jury that had returned the prior, technically flawed indictment, the grand jury was tainted. For the reasons that follow, Mejia's motion is denied.

## I.     Background

On February 6, 2013, a grand jury returned a seven-count superseding indictment, S5 11 Cr. 1032 (the "S5 Indictment"), against Mejia. The S5 Indictment superseded indictment S4 11 Cr. 1032 (the "S4 Indictment"), to correct an error. Specifically, the S4 Indictment had erroneously stated—as to a number of defendants—that they had been over age 18 at the time of their alleged participation in certain charged murders. Among those defendants is Mejia, whom the S4 Indictment had stated was over age 18 at the time she allegedly participated in a particular

charged murder.[1]  S4 Indictment ¶ 194.

### A. The S5 Indictment

The S5 Indictment charges Mejia with eight crimes. Count One charges Mejia with racketeering, in violation of 18 U.S.C. §§ 1961 and 1962(c). S5 Indictment ¶¶ 1–8. It alleges that she participated in three predicate acts underlying that charge: Racketeering Act Two (conspiracy to murder and murder of Miguel Perez), *id.* ¶¶ 12–14; Racketeering Act Thirty-Seven (conspiracy to commit robbery and attempted robbery of Victim-22), *id.* ¶¶ 63–66; and Racketeering Act Thirty-Nine (narcotics conspiracy), *id.* ¶¶ 68–71. Count Two charges Mejia with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). *Id.* ¶¶ 72–74. Count Four charges Mejia with murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(1). *Id.* ¶¶ 87–88. Count Thirty charges Mejia with assault in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3). *Id.* ¶¶ 146–47. Count Thirty-Two charges Mejia with narcotics conspiracy, in violation of 21 U.S.C. § 846. *Id.* ¶¶ 150–153. Finally, Counts Thirty-Four, Forty-Nine, and Fifty-One charge Mejia with use of a firearm in furtherance of a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(j) or 924(c)(1)(A)(iii). *Id.* ¶¶ 155, 170, 172.

These charges against Mejia arose from her alleged role as the leader of the female faction of the Bronx Trinitarios Gang (the "Gang"), known as the "Bad Barbies." *Id.* ¶¶ 3–4. The Indictment alleges that Mejia, as leader of the Bad Barbies, engaged in numerous crimes in conjunction with the Gang, including murder, assault, narcotics trafficking, and a number of firearms offenses. *Id.* ¶¶ 1–6.

---

[1] In December 2011, an earlier indictment (S1 Cr. 1032) was returned against approximately 50 defendants, in four counts, the lead count charging a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). Mejia was first added as a defendant on December 12, 2012, when the grand jury returned the fourth superseding indictment (S4 Cr. 1032), which added 26 new defendants and expanded the charges against various existing defendants.

The S5 Indictment charges that on June 2, 2011, Mejia lured a victim from Connecticut to the Bronx, New York, where Mejia's brother, Jose Mejia, was waiting with a loaded .45 caliber handgun. S5 Indictment ¶¶ 63–66. It alleges that Mejia conspired and attempted to rob, and assaulted, the victim. *Id.*; *see also id.* ¶¶ 146–47 (charging Mejia for assault in aid of racketeering activity for her role in the attempted robbery).

The S5 Indictment also charges Mejia with conspiracy to murder and murder of Miguel Perez (the "Murder"), as well as murder in aid of racketeering activity for her alleged role in the Murder, on December 11, 2005. S5 Indictment ¶¶ 12–14, 87–88; Gov't Br. 2. According to the Government, Perez was a member of a rival gang, Dominicans Don't Play (the "DDPs"), and he was killed as an act of retaliation against the DDPs. Gov't Br. 2. The S5 Indictment also charges Mejia for her role in a narcotics conspiracy lasting between approximately 2003 and 2012. S5 Indictment ¶¶ 68–71. It alleges that Mejia, along with other Gang members, allegedly possessed and distributed controlled substances including marijuana, a substance with a cocaine base, cocaine, oxycodone, and suboxone. *Id.*

Finally, as for the three counts charging Mejia with using a firearm in furtherance of a crime of violence or a drug trafficking crime, *id.* ¶¶ 155, 170, 172, these relate, respectively, to Mejia's role in the assault and attempted robbery, the murder, and the narcotics conspiracy. *Id.*

### B.     The S4 Indictment

On December 12, 2012, the grand jury returned the immediately preceding S4 Indictment. It charged Mejia with: (1) racketeering, in violation of 18 U.S.C. §§ 1961 and 1962(c); (2) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); (3) murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (arising from the Murder); (4) assault in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3); (5) narcotics conspiracy, in violation of

21 U.S.C. § 846; and (6) three counts of use of a firearm in furtherance of a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(j) or 924(c)(1)(A)(iii) (one count of which arose from the Murder).  Gov't Br. 2–3; *see generally* S4 Indictment.

However, at the time the grand jury returned the S4 Indictment, the Government mistakenly believed that Mejia had been 18 years old at the time of the Murder and, therefore, was eligible for the death penalty in connection with that offense.  Gov't Br. 3.  As a result, the Government presented evidence to the grand jury to the effect that Mejia had been over age 18 at the time of that crime.  Def. Br. 2.  The S4 Indictment reflected such evidence:  It contained, among others, special findings: (1) that Mejia was 18 years of age or older at the time of the murder; and (2) that she had intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force be used in connection with a person, other than one of the participants in the offense, and that that person, Perez, had died as a direct result of that act.[2]  S4 Indictment ¶ 194.

Following return of the S4 Indictment, the Government determined that Mejia and several codefendants had, in fact, been under age 18 at the time they allegedly committed the Murder.  Gov't Br. 4.  Thus, Mejia could not face mandatory life imprisonment or the death penalty.  *See Miller v. Alabama*, 132 S. Ct. 2455 (2012) (holding that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment); *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the Eighth Amendment prohibits capital punishment for individuals under age 18).

---

[2] In *Matthews v. United States*, the Second Circuit held that, "in the wake of *Apprendi* [v. *New Jersey*, 530 U.S. 466 (2000)], *Ring* [v. *Arizona*, 536 U.S. 584 (2002)], and [*United States* v.] *Quinones*[, 313 F.3d 49 (2002)] . . . the death penalty may not be imposed unless the charging instrument specifies aggravating circumstances justifying capital punishment." 622 F.3d 99, 102 (2d Cir. 2010).  18 U.S.C. §§ 3591 and 3592 set out these aggravating factors.  The S4 Indictment's special findings conformed to *Apprendi*, *Ring*, and *Quinones*.

### C.     Differences Between the S4 and S5 Indictments

As a result of the determination that Mejia and several co-defendants had been under age 18 at the time of the Murder, the Government sought and obtained the S5 Indictment, from the same grand jury that had returned the S4 Indictment. Gov't Br. 4. The S5 Indictment is substantively identical to the S4 Indictment with respect to Mejia except that: (1) Mejia is not named in any special findings; and (2) Mejia is not charged with murder in aid of racketeering in connection with the Murder, because that charge carries a sentence of death or mandatory life imprisonment. *Id.*; *see* S5 Indictment ¶¶ 174–91. In other words, the S5 Indictment narrows the charges against Mejia. However, Mejia is still charged with committing the Murder as a predicate act to the racketeering charge. Gov't Br. 4; *see* S5 Indictment ¶¶ 12–14. The S5 Indictment does not add any charges against Mejia.

## II.    Analysis

Mejia seeks to dismiss the S5 Indictment on the grounds that the Government violated her Fifth and Sixth Amendment rights. Def. Br. 1. She argues that the Government should have presented the proposed S5 Indictment to a new grand jury, rather than the same one that had returned the S4 Indictment, because the existing grand jury was tainted by its consideration of the earlier indictment, and presenting the S5 Indictment to it prejudiced Mejia. *Id.* at 9.

### A.     Principles Regarding Dismissal of an Indictment for Grand Jury Misconduct

An indictment is properly dismissed where there has been a breach of certain discrete rules "drafted and approved by th[e Supreme] Court and by Congress to ensure the integrity of the grand jury's functions." *United States v. Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J.,

concurring in judgment). Federal Rule of Criminal Procedure 6(d),[3] for example, assures "secrecy of [] grand jury proceedings" and "guarantee[s] that the grand jury is given the opportunity to make an independent examination of the evidence . . . free of undue prosecutorial influence." *Mechanik*, 475 U.S. at 74. Another example of such a rule is Federal Rule of Criminal Procedure 6(e), which "plac[es] strict controls on disclosure of matters before the grand jury." *United States v. Williams*, 504 U.S. 36, 59 n.6 (1992).

Outside the circumstance where such a rule has been violated, however, "[t]he dismissal of an indictment is only warranted in exceptional circumstances." *Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500, 514 (S.D.N.Y. 2005); *see also United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979) ("[W]e have upheld the dismissal of an indictment only in very limited and extreme circumstances."). Particularly relevant here, the Second Circuit has held that a "district court cannot dismiss an indictment because the prosecution presented unreliable, misleading, or incomplete evidence to the grand jury." *United States v. Howard*, 216 F.3d 1074 (2d Cir. 2000) (Table), 2000 WL 772405, at *3 (June 15, 2000); *see also Williams*, 504 U.S. at 54–55 (district court may not dismiss an otherwise valid indictment because the Government failed to disclose substantial exculpatory evidence to the grand jury); *Costello v. United States*, 350 U.S. 359, 363–64 (1956) (indictment cannot be challenged on the ground that it is not supported by adequate or competent evidence). As these cases reflect, dismissing an indictment is an "extreme sanction" that is appropriate "only when the pattern of misconduct is widespread or continuous." *United States v. Brown*, 602 F.2d 1073, 1077 (2d Cir. 1979) (citation omitted). For this reason, the Second Circuit has stated, even if a Government agent were to give the grand jury "misleading testimony—including an inaccurate summary of the evidence," absent evidence

---

[3] Rule 6(d) provides that "no person other than the jurors . . . may be present while the grand jury is deliberating or voting." Fed. R. Crim. P. 6(d).

of other prosecutorial misconduct, this alone would not support dismissal of an indictment. *United States v. Jones*, 164 F.3d 620 (2d Cir. 1998) (Table), 1998 WL 708952, at *2 (Oct. 7, 1998).

There is also, to be sure, a class of cases "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing [for] the presumption of prejudice." *Bank of Nova Scotia*, 487 U.S. 250, 256 (1988). But this class of cases is narrow indeed: Courts "seldom presume prejudice to the defendant as a result of a grand jury error," save in "extraordinary" circumstances where "errors of constitutional magnitude" are implicated. *United States v. Carter*, No. 04 Cr. 594 (NRB), 2005 WL 180914, at *4 (S.D.N.Y. Jan. 25, 2005) (citations omitted). These violations include racial or gender discrimination in the selection of grand jurors. *See, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 261–62 (1986) (holding that racial discrimination in the selection of grand jurors compelled dismissal of the indictment); *Ballard v. United States*, 329 U.S. 187, 193 (1946) (holding that dismissal of the indictment was warranted when women were intentionally and systematically excluded from the grand jury).

The allegation in this case is a far cry from any such circumstance. There is no evidence of an "error[] of constitutional magnitude here." *Carter*, 2005 WL 180914, at *4. Rather, on the facts presented, the Government appears to have presented an incorrect fact—as to Mejia's age—to the grand jury. There is no credible suggestion, however, that this represented misconduct, let alone of any extreme nature; that this error was in any sense willful; or that the structural protections of the grand jury were compromised.

Mejia argues that presentation of evidence to the grand jury that she was 18 years old at the time of the alleged crimes "induce[d] the grand jury to speculate and draw conclusions based upon incorrect factual determinations." Def. Br. 7. But this grandiose pronouncement gains no

traction when analyzed at the concrete level of the specific erroneous evidence presented to the grand jury—Mejia's age. Mejia fails to explain why the grand jury's initial misapprehension as to her age would, either at the time it returned the S4 Indictment or at the time it returned the S5 Indictment, meaningfully impair the grand jury's ability to determine whether there was probable cause to believe that she had engaged in the crimes embodied in the proposed indictment.

*United States v. Rivieccio*, on which Mejia relies, is inapposite. In *Rivieccio*, the Second Circuit stated that there are "two narrow exceptions to the general rule that facially valid indictments may not be challenged by allegations that the grand jury heard immunized testimony or otherwise tainted evidence": when the defendant testifies under immunity before the same grand jury that returns the indictment or "when the government concedes that the indictment rests almost exclusively on tainted evidence." 919 F.2d 812, 816 n.4 (2d Cir. 1990). This case falls outside these two categories. Mejia does not suggest that any immunized testimony of hers was presented to the grand jury, or that there was any comparably tainted evidence (*e.g.*, testimony that was subject to a privilege which Mejia held).

Mejia argues that because the same grand jury returned the S5 Indictment as had returned the S4 Indictment, the grand jury was "tainted" and incapable of giving the charges in the S5 Indictment "fair consideration." Def Br. 2. But Mejia fails concretely to explain why such a taint should be presumed, or why the now-corrected evidence that she had been over age 18 at the time of the Murder realistically swayed the grand jury's decision to return the charges in the S5 Indictment. There is nothing inherently prejudicial or inflammatory about being over age 18. And, notably, the S5 Indictment narrows the charges against Mejia, deleting the special findings against her and the charge of murder in aid of racketeering in connection with the Murder. *See* S5 Indictment ¶¶ 174–91; Gov't Br. 4.

In sum, the presentation of the S5 indictment to the same grand jury to which the S4 indictment was presented does not come close to justifying the "extreme sanction" of dismissal of the indictment. *United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978).

### B. No Prejudicial Effect

Even if presenting the S5 Indictment to the same grand jury that had returned the S4 Indictment somehow constituted prosecutorial misconduct—and the Court does not so find— Mejia does not credibly allege prejudice from that lapse. And "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia*, 487 U.S. at 254.

In this regard, *United States v. Basciano*, 763 F. Supp. 2d 303, 316 (E.D.N.Y. 2011), is instructive. There, the defendant argued that his indictment should be dismissed because the grand jury that returned it had also returned an indictment against him in an earlier, separate case.[4] The defendant argued that, in returning the second indictment, the grand jury had been biased because the charges included evidence of the defendant's solicitation to murder the prosecutor of the earlier case. *Id.* Because the grand jury had formed a "working relationship" with the prosecutor, defendant argued, he was "impermissibly prejudiced" by their considering the second indictment. *Id.* at 315. Rejecting that claim, the Court held that, measured against the "vast evidence" implicating the defendant in the crimes reflected in the second indictment, the evidence of the murder solicitation did not "'substantially influence[] the grand jury's decision to indict,'" and that dismissal was therefore not warranted. *Id.* at 315–16 (quoting *Bank of Nova Scotia*, 487 U.S. at 256).

---

[4] The record in *Basciano* is unclear as to whether, in fact, the same grand jury heard both cases. However, the court found that "[e]ven if the Government presented both cases to the same grand jury, this in no way resolves the issue of whether . . . the indictment should be dismissed." *Basciano*, 763 F. Supp. 2d at 315.

Here, there is far less reason to infer prejudice. Mejia has not been indicted by the same grand jury in two separate cases. Nor has she been charged with additional crimes in the superseding indictment. Quite the contrary, the S5 Indictment is a subset of the S4 Indictment as it relates to Mejia, and Mejia does not identify any new damaging evidence that she believes was presented, or abandoned, in the course of seeking the S5 Indictment. Mejia fails to explain why the deletion of the special findings and the dropping of the murder in aid of racketeering charge could plausibly have prejudiced her, let alone "substantially influenced the grand jury's decision to indict." *Basciano*, 763 F. Supp. 2d at 315–16. The content of the special findings is not inherently prejudicial. And Mejia does not allege that the grand jury was in fact aware that the function of a special finding is to provide notice of a statutory factor in the event that a capital charge is authorized; she appears to have simply inferred such an awareness. *See* Gov't Br. 7 n.1. As noted, the incorrect (but presumably corrected) claim that Mejia had been over age 18 at the time of the Murder is not, itself, an inherently inflammatory or prejudicial allegation, but instead merely a constitutional prerequisite for a capital charge.

The Second Circuit has repeatedly held that a "district court cannot dismiss an indictment because the prosecution presented unreliable, misleading, or incomplete evidence to the grand jury." *Howard*, 2000 WL 772405 at *3 (citing *Williams*, 504 U.S. at 54); *see also United States v. Calandra*, 414 U.S. 338, 345 (1974) (finding that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence"); *Costello v. United States*, 350 U.S. 359, 363 (1956) (declining to dismiss indictment where only hearsay evidence was before the grand jury); *United States v. Tranquillo*, 606 F. Supp. 2d 370, 381 (S.D.N.Y. 2009) (declining to dismiss indictment based on accusation that Government presented false testimony to grand jury); *United States v. Kaminski*, 97-CR-382

(RSP/DH), 1998 WL 275594, at *6 (N.D.N.Y. May 27, 1998) (declining to dismiss indictment where defendant alleged a government witness provided "unreliable testimony" to grand jury); *United States v. Rodriguez*, No. 95 Cr. 0754 (HB), 1996 WL 479441, at *2 (S.D.N.Y. Aug. 22, 1996) (declining to dismiss indictment "even assuming . . . testimony [before grand jury] was inaccurate"). At most, that is what has occurred here. On the facts proffered by Mejia, that the Government presented erroneous information about Mejia's age to the grand jury falls far short of meriting dismissal of the S5 Indictment.

## CONCLUSION

For the foregoing reasons, Mejia's motion to dismiss the indictment is denied. The Clerk of Court is respectfully directed to terminate the motion at docket number 676.

SO ORDERED.

/s/ Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: June 26, 2013
    New York, New York